1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   MICHAEL R. FRANCE,                    Case No. C 20-418 WHA (PR)

8            Plaintiff,                    **ORDER GRANTING MOTION FOR
                                           SUMMARY JUDGMENT; GRANTING
9        v.                                MOTION TO STAY DISCOVERY;
                                           GRANTING MOTION TO
10  RON BLOOMFIELD; ARNOLD;                SUBSTITUTE COUNSEL; DENYING
    KING; LAJUN,                           MOTION TO AMEND ANSWER**
11
             Defendants.                   (ECF Nos. 12, 13, 14, 18)
12

13                            **INTRODUCTION**

14          Plaintiff, a California state prisoner at San Quentin State Prison ("SQSP"), filed this pro se

15  civil rights case under 42 U.S.C. § 1983 alleging that San Quentin officials interfered with his

16  access to the courts by confiscating his legal paperwork, and were deliberately indifferent to his

17  safety and medical needs by transferring COVID-positive prisoners to San Quentin and refusing to

18  treat his asthma and hepatitis C.  The First Amended Complaint ("FAC") filed on December 11,

19  2020, is the operative complaint.  Defendants filed a motion for summary judgment.  Plaintiff filed

20  an opposition, and defendants filed a reply.  For the reasons discussed below, the motion for

21  summary judgment is **GRANTED**.  Defendants' motions to stay discovery and to substitute counsel

22  are also **GRANTED.**  Defendants' motion to amend their answer is **DENIED** as moot.

23                              **ANALYSIS**

24  A.    **STANDARD OF REVIEW**

25          Summary judgment is proper where the pleadings, discovery and affidavits show that

26  there is "no genuine issue as to any material fact and that the moving party is entitled to

27  judgment as a matter of law."  Fed. R. Civ. P. 56.  Material facts are those which may affect the

28  outcome of the case.  A dispute as to a material fact is genuine if there is sufficient evidence for

*United States District Court*
*Northern District of California*

a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

**B.    DISCUSSION**

Plaintiff alleges that around December 2019, defendants took his legal paperwork while moving him to administrative segregation under the pretense of a false investigation, depriving him of the ability to file responses in another unidentified civil lawsuit which was consequently dismissed. He alleges that defendants Lieutenant A. Lajun and Sergeant C. King took the paperwork on orders from defendant Acting Warden Ron Bloomfield, and that defendant Captain J. Arnold was "involved in every action and decision" (ECF No. 7 at 1).

Plaintiff also alleges that Bloomfield "brought into San Quentin a very large number of COVID-19 positive inmates to spread the deadly virus amongst us" (ECF No. 7 at 1). He alleges that "the positive inmates were intentionally spread out to every single housing unit . . . to guarantee maximum spread and maximum casualties" (*ibid.*). Plaintiff states he contracted COVID-19 in late May of 2020, was sick for five and a half weeks, suffered two seizures, and continued to experience shortness of breath and reduced sense of smell (*id.* at 1-2). He also alleges that Bloomfield ordered medical staff to stop treating all prisoners, and that he had emergency surgery as a result of not receiving treatment for his asthma and hepatitis C (*ibid.*).

Defendants move for summary judgment based on plaintiff's failure to exhaust his

United States District Court
Northern District of California

1    administrative remedies.

2              1.    EXHAUSTION REQUIREMENT

3         The Prison Litigation and Reform Act ("PLRA") requires exhaustion of all available

4    administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a).  A prisoner may

5    not exhaust administrative remedies during the pendency of a complaint; federal courts are

6    required to dismiss such a complaint without prejudice.  *McKinney v. Carey*, 311 F.3d 1198, 1200

7    (9th Cir. 2002).  A prisoner may, however, exhaust new related claims that arise after filing a

8    complaint and subsequently file an amended complaint to include the new exhausted claims.

9    *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010).

10        In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant

11   may move for dismissal under Rule 12(b)(6).  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014)

12   (en banc).  Otherwise, defendants must produce evidence proving failure to exhaust in a motion

13   for summary judgment under Rule 56.  *Ibid.*

14        Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal

15   standards, nor must they be "plain, speedy, and effective."  *Porter v. Nussle*, 534 U.S. 516, 524

16   (2002).  Even when the prisoner seeks relief not available in grievance proceedings, notably

17   money damages, exhaustion is a prerequisite to suit.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

18   A prisoner "seeking only money damages must complete a prison administrative process that

19   could provide some sort of relief on the complaint stated, but no money."  *Id.* at 734.

20        "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

21   administrative remedies:  An inmate, that is, must exhaust available remedies, but need not

22   exhaust unavailable ones."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original).

23   "To be available, a remedy must be available as a practical matter; it must be capable of use; at

24   hand."  *Albino*, 747 F.3d at 1171 (citation and internal quotation marks omitted).

25        The PLRA requires "proper exhaustion," including "compliance with an agency's

26   deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The

27   administrative remedies available to California prisoners for a violation of their constitutional

28   rights consist of a grievance to the local or regional Institutional Office of Grievances and an

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    appeal to the Office of Appeals ("OOA").  Cal. Code Regs. tit. 15, §§ 3483, 3485.  Prior to June 1,

2    2020, there were three "formal" levels to exhaust the grievance process, as well as a precursor

3    "informal" level.  *See Brodheim v. Cry*, 584 F.3d 1262, 1265 (9th Cir. 2009); Cal. Code Regs. tit.

4    15, §§ 3084.2(a), 3084.7, 3084.8(b).

5          A grievance must be submitted within 30 days of discovery of an "adverse policy,

6    decision, action, condition, or omission by the Department."  Cal. Code Regs. tit. 15, § 3482.  It

7    should "describe all information known and available to the claimant regarding the claim,

8    including key dates and times," and names, titles, or descriptions of staff members and witnesses;

9    describe any attempts at resolving the complaint informally, and include or identify relevant

10   documents or records.  *Ibid*.  An appeal of the response to the grievance should "describe in detail

11   why the decision provided by the Institutional or Regional Office of Grievances is inadequate."

12   *Id.* § 3485.  The grievance and appeal should "alert the prison to the nature of [the] problem" and

13   "allow prison officials to take appropriate responsive measures."  *Griffin v. Arpaio*, 557 F.3d

14   1117, 1121 (9th Cir. 2009).

15         Summary judgment on the basis of failure to exhaust is appropriate where defendants

16   produce undisputed evidence that, viewed in the light most favorable to the prisoner, "prov[es]

17   failure to exhaust."  *Albino*, 747 F.3d at 1166.

18         2.    ACCESS TO COURTS CLAIM

19         Defendants have submitted uncontested evidence in the form of a declaration by the SQSP

20   Grievance Coordinator stating that plaintiff filed only two grievances regarding the confiscation of

21   his legal paperwork (ECF No. 12-3 at 3-4): grievance number 14168 (*id.* at 10-13), and grievance

22   number 47576 (*id*. at 32-35).  Both grievances were filed *after* plaintiff's original complaint but

23   *before* his amended complaint.

24               a.    GRIEVANCE NUMBER 14186

25         In grievance 14186 on July 8, 2020, plaintiff alleged that during an incident in which he

26   received a false writeup, "ISU [Investigative Services Unit] stole all my legal paperwork denying

27   me access to the courts, still have not gotten my paperwork & property back" (ECF No. 12-3 at

28   12).  He attached the writeup paperwork documenting that the incident took place on May 22,

United States District Court
Northern District of California

1    2020 (*id.* at 14).  The Office of Grievances responded on August 5, 2020, disapproving plaintiff's

2    allegations about the false up writeup but not addressing his allegation about confiscated

3    paperwork (*id.* at 37-38).

4         Plaintiff appealed on August 28, 2020 (ECF No. 12-4 at 3).  He challenged the Office of

5    Grievances' failure to address his claim regarding his time credits and stated:

6              CDCR here at SQSP doesn't follow its own rules and just puts up a
               wall of denial instead of resolving issues and mistakes at the lowest
7              possible level violating due process rights and manipulating the 60%
               process making it a joke. This issue is black and white simple a pen
8              filler or whatever it was is by no means a dangerous contraband which
               specifies items like explosives this rule was made for things like
9              matchhead bombs which were an issue up til 2004. This is abuse
               under color of authority.
10

11   (*Id.* at 28).  The Office of the Appeals ("OOA") denied the appeal on October 28, 2020,

12   explaining why the pen fillers constituted dangerous contraband and informing plaintiff that the

13   denial exhausted his administrative remedies (*id.* at 24).  Because plaintiff did not raise his claim

14   about the confiscation of his paperwork or access to the courts in this appeal, it did not exhaust

15   this claim.  His appeal did not, as required by CDCR regulations, assert that the initial response

16   failed to address the confiscation of his paperwork, nor did it provide notice to the prison that he

17   was continuing to pursue that claim.  Plaintiff's opposition to summary judgment states only that

18   he "exhausted any and all administrative remedies repeatedly," but he does not present any

19   evidence contrary to the facts presented by defendants (ECF No. 15 at 3).

20              b.    GRIEVANCE NUMBER 47576

21        In grievance 47576 on October 8, 2020, plaintiff alleged: "ISU came to my cell in Carson

22   on 5-22-20 and took all my property even my legal paperwork" (ECF 12-3 at 32).   He claimed:

23             [T]he ISU gave my property to Serrentino (Carson property c/o
               [corrections officer]) who boxed it all up and put on the shelf. This
24             caused me to lose a quarter million dollar settlement cuz your officer
               refused to give me my paperwork meaning I could not file a response
25             to the open case. This case was dismissed for this c/o's actions
               denying me access to the courts. I've talked to the AC [Adjustment
26             Center] property officer who refuses to do theyre job cuz Serrentino
               says my property is hot cuz of the bowl and cup even though I still
27             have another bowl and cup over here in the cell and my property
               paperwork is being withheld for almost 5 months . . . .
28

5

United States District Court
Northern District of California

1    (*Id.* at 34).

2          The Office of Grievances disapproved the claim on December 4, 2020, explaining that "the

3    appellant was to transfer to PBSP [Pelican Bay State Prison] so his property was trans-packed and

4    sent to R&R [Receiving and Release] from the Adjustment Center (AC). Once the appellant

5    refused to transfer he was moved back to Carson.  The appellant was given his legal paperwork

6    and signed the CDCR 1083 property form" (ECF No. 12-3 at 43).

7          Plaintiff appealed on December 14, 2020:

8              The federal civil case was hindered by SQSP actions. They brought
               my paperwork a couple days ago after 8 months of illegally holding
9              my property. All my complaints still stand. Nothing has been
               achieved by these scumbags here finally doing there job. The receipt
10             is also dated a couple days ago. You people cost me a 6 figure
               settlement and blocked me of all my civil rights and denied my access
11             to courts . . . .

12   (ECF No. 12-4 at 11).  Plaintiff also asserted that defendants withheld his legal property for a

13   month before it was taken to R&R and with the knowledge that he had court deadlines (*id.* at 12).

14         Although defendants appear to have inadvertently failed to include a copy of the OOA's

15   decision (see *id.* at 10-22), the parties do not dispute that the OOA denied plaintiff's appeal on

16   February 13, 2021, over two months after plaintiff filed his amended complaint on December 11,

17   2020.  Thus, plaintiff did not exhaust this claim until after filing his amended complaint.  As

18   explained above, to satisfy the exhaustion requirement, plaintiff was required to complete the

19   prison's administrative appeals process before bringing the claim in federal court.  Summary

20   judgment on exhaustion grounds is therefore appropriate on the claim that defendants denied

21   plaintiff access to the courts.[1]

22         3.    DELIBERATE INDIFFERENCE CLAIM

23         Plaintiff's amended complaint alleges (1) that he contracted COVID-19 in May 2020

24

25   _____

26   [1] Plaintiff's original complaint describes his legal paperwork being confiscated in May 2020 when
     defendants "destroy[ed] [his] cell for the third time" (ECF No. 1 at 5), and his amended complaint
     alleges confiscation of his legal paperwork around December 2019.  Grievance number 47576
27   alleges an incident in May 2020.  Although it is not clear whether plaintiff refers to the same
     incident or multiple incidents, the dates are close enough in time and the allegations sufficiently
28   detailed that the claim is likely adequately exhausted as of plaintiff's February 13, 2021, receipt of
     the OOA response.

United States District Court
Northern District of California

1    because of defendants' actions, and (2) that he received inadequate medical care for other health

2    conditions.  Regarding the latter, defendants have presented evidence in the form of a declaration

3    by Health Care Correspondence and Appeals Branch staff that plaintiff "has never submitted any

4    health care grievances or health care appeals" (ECF No. 12-2 at 3).  Plaintiff has not specifically

5    contested this assertion nor provided any evidence to the contrary; summary judgment is therefore

6    appropriate on plaintiff's medical care claim.

7            Regarding the former, the evidence demonstrates that plaintiff filed only one grievance

8    related to COVID-19, number 46805 (ECF No. 12-3 at 3-4, 27-30, 32-35).  Although defendants'

9    declarants, SQSP Grievance Coordinator and OOA Associate Director, attest that plaintiff also

10   made allegations regarding COVID-19 in grievance number 47576 (*id.* at 3; ECF No. 12-4 at 3);

11   they are mistaken; grievance number 47576 made no mention of COVID-19 (ECF 12-3 at 32-35).

12                       a.    GRIEVANCE NUMBER 46805

13           In grievance number 46805, filed on September 29, 2020, plaintiff alleged:

14                CDCR is failing to provide adequate cleaning supplies, proper PPE,
                  maintain proper ventilation, fixtures and equiptment. And organize
15                cleaning activities. While intentionally engineering a Covid-19
                  outbreak at SQSP and intentionally spreading infected possitive
16                inmates throughout the housing units to guarantee the deadly spread.
                  CDCR forced me to live in proximity to human waste throughout my
17                whole stay here in Badger & Carson sections. These units have fecal
                  matter, urine, hair, blood and food remnants on the floor & walls in
18                layers. CDCR forces people to live in grime & filth. Neither staff or
                  inmate workers clean regularly. People are forced to use personal
19                soap & bathing towels to clean cells. I do not have access to clean
                  laundry like the CDC and WHO recommend. Staff track Covid-19
20                carrying matter on there shoes up & down the halls & tiers. The shared
                  mop and cleaning brush are never sanitized, this means I am exposed
21                to germs. If I want to clean my cell I am forced to potentially expose
                  myself to germs. I have maybe seen the tier 8 cleaned twice in the
22                whole year here at SQSP. I am forced to use unsanitized handcuffs
                  every day almost. The food has and is prepared in an insanitary
23                fashion. There is no such thing as social distancing here and theres no
                  ventillation. There is no safe way to house inmates here at SQSP.
24

25   (ECF No. 12-3 at 27, 29).  Plaintiff requested immediate release, as well as that

26           bleach, lysol, and cellblock 64[2] all free of charge be given to all

27   _____

28   [2] Cellblock 64 is a disinfectant produced at the California Prison Industry Authority. *See*
     https://catalog.calpia.ca.gov/product/cell-block-64-disinfectant-cleaner-deodorizer-3961/.

United States District Court
Northern District of California

1

2

3

4

> inmates every 24 hours, also to provide small bottles of hand sanitizer weekly, proper PPE, e.g. gloves, N95 masks and cleaning materials, and training to inmates and staff who participate in prep of food or other goods, like laundry & supplies. Permit the distribution of weekly packages containing the following: cleaning supplies (hand sanitizer, gloves, tissues, cleaning fluid) and hygiene products (soap, toothpaste, shampoo, non-perishable nutritious food (e.g. trail mix, preserved meat, healthy soup packets)

5

(*id.* at 29).

6

The Office of Grievances disapproved the claim on October 21, 2020, describing the steps

7

CDCR was taking to mitigate the COVID-19 pandemic (ECF No. 12-3 at 40-41). The response

8

also informed plaintiff that he was not eligible for accelerated release (*id.* at 41).

9

Plaintiff appealed to the OOA on October 26, 2020 (ECF No. 12-4 at 4). He described the

10

grievance response as "nothing but lies and excuses" and alleged that he "wasn't even tested until

11

[he] had already recovered from Covid" (*id.* at 50). He wrote that "the death toll speaks for itself"

12

and stated, "everyone caught covid-19. Including myself and it was terrifying" (*ibid.*). He also

13

referred to the "consolidated habeas corpus petition," stating "the courts already ordered my

14

release" (*ibid.*). The OOA did not respond by the 60-day deadline of December 25, 2020, and

15

instead sent plaintiff a letter on February 19, 2021 acknowledging that the time had expired and

16

there would be no further response (*id.* at 4, 49).

17

Plaintiff's deliberate indifference claim regarding COVID-19 was not exhausted until at

18

least December 25, 2020, when the OOA's response was due—two weeks after he filed his

19

amended complaint. Summary judgment is therefore appropriate for defendants on this claim

20

because plaintiff did not exhaust all of his available administrative remedies before bringing it in

21

federal court.

22

4.      PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT

23

Plaintiff also requests "counter summary judgment" on the merits in his opposition filing

24

based on "the Von Staich case." In *In re Von Staich*, 56 Cal. App. 5th 53, 68 (Cal. 2020), the

25

California Court of Appeal found San Quentin State Prison officials deliberately indifferent to the

26

health and safety of San Quentin prisoners during the COVID-19 pandemic. The California

27

Supreme Court subsequently granted review and remanded the case back to the Court of Appeal to

28

consider holding an evidentiary hearing. *Staich on H.C.*, 477 P.3d 537 (Cal. 2020). The

United States District Court<br>Northern District of California

1   California Court of Appeal returned the case to Marin County Superior Court, where it was

2   consolidated with a number of other habeas petitions regarding COVID-19 conditions at San

3   Quentin, which proceeded to evidentiary hearing in May 2021.  Because summary judgment is

4   appropriate for defendants based on plaintiff's failure to exhaust, it is unnecessary to reach

5   plaintiff's affirmative motion.

6                                          **CONCLUSION**

7          For the foregoing reasons, defendants' motion for summary judgment on exhaustion

8   grounds is **GRANTED.**  This ruling is without prejudice to plaintiff filing his exhausted claims in a

9   new case.

10          Defendants' motions to stay discovery and substitute counsel are **GRANTED**.  Their motion

11   to amend their answer is **DENIED AS MOOT.**

12          **IT IS SO ORDERED.**

13   Dated:    August 27, 2021

14   

15   WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28